Argued 6 April, decided 15 May, rehearing denied 17 July, 1905.

### BEADLE *v.* PAINE.

80 Pac. 903.

SCOPE OF CROSS-EXAMINATION.

1. In an action against a physician for injuries to plaintiff, owing to negligent treatment of his fractured arm, a physician having been asked on his examination in chief if there was not an X-ray machine in the city where plaintiff was treated, and he having answered that a certain physician had one, it was not improper cross-examination to inquire whether it was usual in that locality for surgeons to have such appliances.

PHYSICIANS—MALPRACTICE—TESTING KNOWLEDGE OF WITNESS.

2. An expert witness having testified to some general surgical propositions, and that a specified treatise was a standard authority, it was not improper cross-examination to ask the witness if that work did not contain statements contradictory of his testimony.

CROSS-EXAMINATION COVERING QUESTIONS ALREADY ANSWERED.

3. Where questions put to witnesses on cross-examination were contained in former questions, to which no objections were made, it was within the discretion of the court to allow the questions to be answered or not.

FORM OF BILL OF EXCEPTIONS—ATTACHING TRANSCRIPT OF EVIDENCE.

4. A bill of exceptions should show the matters objected and excepted to, with so much explanatory statement as may be necessary to show the bearing of the ruling, but the testimony at length should not be attached to the bill of exceptions or referred to in connection with rulings on the introduction of evidence.

INSTRUCTIONS—REPEATING QUALIFYING PHRASES.

5. Where proper instructions have been given in reference to a particular class of persons or with certain qualifying expressions, it will not be necessary to repeat them with every paragraph. For instance, where, in an action for malpractice of surgery, the court gave instructions as to the degree of skill that should be observed by persons holding themselves out as specialists in the practice of surgery, it was not necessary to make reference to specialists in giving an instruction to the effect that it was not negligence for defendant not to have an X-ray machine unless it was usually employed by physicians and surgeons in that locality.

PHYSICIANS AND SURGEONS—INSTRUCTION AS TO DEGREE OF SKILL RE-
    QUIRED OF SPECIALISTS.

6. The court instructed that a physician or surgeon making a specialty of the practice of surgery is not bound to use any greater skill, care or diligence in the treatment of the case than a specialist in the same general locality in which such physician or surgeon resides and practices his profession. *Held,* that while the instruction might properly have called for such skill, care and diligence as were observed in like or similar localities, there was no error in omitting to do so, the court having in previous instructions explicitly informed the jury that the degree of skill required

would be that possessed by the average members of the profession practicing as specialists in similar localities, regard being had to the advanced state of medical science.

SURGEONS—MALPRACTICE—NEGLIGENCE OF PATIENT.

7. In an action for malpractice of surgery, where the defendant is charged with negligence or nonobservance of proper care, or want of skill, it is a good defense that the patient was negligent at the time, which conduced or contributed to produce the injury complained of, but it will not suffice to defeat the action that the injured party was subsequently negligent, and thereby conduced to the aggravation of the injury primarily sustained, though this later negligence of the patient may be shown in mitigation of damages.

SURGEONS—INSTRUCTIONS AS TO CARE BY PATIENT.

8. In an action for injuries to plaintiff owing to the negligence of defendant in treating plaintiff's fractured arm, the court instructed that if plaintiff, after having been treated for some time by defendant, was told by defendant to return for further treatment, and was instructed in the proper care and use of his arm, and he failed to return for treatment and used his arm in a different manner, the jury might take such facts into consideration in determining whether the plaintiff was negligent. *Held*, that the instruction was not erroneous.

REQUESTS FOR INSTRUCTIONS.

9. Instructions particularly desired should be presented to the court, and it is not the duty of the supreme court to survey the entire testimony in order to determine what instructions should have been given.

From Lane: JAMES W. HAMILTON, Judge.

Action in tort by Herbert Beadle against Paine & Kuykendall, surgeons, resulting in a judgment for defendants, from which this appeal is taken.                                          AFFIRMED.

For appellant there was a brief over the names of *Louis E. Bean* and *John Monroe Williams,* with an oral argument by *Mr. Williams.*

For respondents there was a brief over the names of *Edwin O. Potter* and *Woodcock & Harris,* with an oral argument by *Mr. Potter* and *Mr. Absalom Cornelius Woodcock.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is an action to recover for injuries alleged to have been sustained by plaintiff in the negligent treatment of his arm by the defendants; the same having been broken, dislocated, and bruised. Numerous errors are assigned in the record, and such as are possessed of obvious merit will be examined.

1. The question propounded to Dr. T. W. Harris on cross-examination were not improper. He was asked on his examination in chief if there was not an X-ray machine in Eugene, to which he answered that Dr. Prentice had one. To push the inquiry on cross-examination to the extent of ascertaining

whether it was usual in that locality for every surgeon to have
a machine of the kind, or whether the one possessed by Dr.
Prentice was the only one to be found in that locality, was not
without the scope of reasonable inquiry. It was germane to the
subject entered upon by plaintiff, and altogether relevant.

The answer of Dr. J. W. Harris was stricken out because not
responsive to the question. In this there was no error. If the
plaintiff had desired the information thus elicited, he could have
had it, no doubt, by directing a proper question to that purpose.

The question propounded to Dr. Van Valzah was on redirect
examination, and, as it seems to have been conceded that there
could have been no union of the fractured bone unless the ends
were in contact, the ruling of the court did the plaintiff no harm.

2. Dr. Hosmer was asked the following question, to which an
exception was saved:

"I will ask you if it isn't stated in that work [the Interna-
tional Cyclopedia of Surgery], page 43, volume 4, that cases
occur of persons—of a young man of fine, healthy condition—
where the fracture remains ununited to the end of the fifth or
sixth month, and that, although the bones are kept in apposition,
and in every other respect the treatment was correct?"

The witness had previously testified that, in a healthy person,
union would always take place, and further that he had read
the International Cyclopedia somewhat, and pronounced the
work standard. The purpose of the question was to test his
knowledge upon the subject and he answered:

"That is possible that this book says this, but I think that the
pathological condition from what I have read and heard—that
there must be something lacking in the system, in the blood,
that is not discovered."

It is difficult to see wherein the answer was injurious to
plaintiff, or that the inquiry made about the book tended to
weaken the witness's testimony in the least. But, however this
may be, counsel did not overstep the rule applicable. The wit-
ness was testifying as an expert, and, his attention being called
to the work, he showed some familiarity with it, whereupon he
was asked if it did not state so and so touching the subject in
hand. The book was not offered, nor does it appear to have
been read from, and the sole purpose of the inquiry was to test

the witness's knowledge of the subject. We think it was proper. In *Connecticut Mut. Life Ins. Co.* v. *Ellis,* 89 Ill. 516, 519, the court say: "The witness had given the symptoms of the disease with which the assured was affected, and pronounced it delirium tremens, and, as a matter of right, plaintiff might test the knowledge possessed by the witness of that disease by any fair means that promised to elicit the truth. It will be conceded it might be done by asking proper and pertinent questions, and what possible difference could it make whether the questions were read out of a medical book, or framed by counsel for that purpose?" *City of Bloomington* v. *Shrock,* 110 Ill. 219 (51 Am. Rep. 679), cited by counsel for plaintiff, is clearly distinguishable from the case at bar.

The question put to the witness Sadie Perkins was properly denied. She was neither a surgeon nor a physician, and was not called as an expert: *O'Hara* v. *Wells,* 14 Neb. 403, 408 (15 N. W. 722).

The question asked Dr. Kuykendall touching the care and skill observed by defendants in the treatment of plaintiff's arm, as compared with the ordinary skill and diligence used by physicians and surgeons in such cases, might not have been technically suitable, in view of the fact that defendants were holding themselves out as specialists in that line, yet the answers elicited show that they gave to the treatment the best skill, and could not possibly have been hurtful to the plaintiff.

3. The substance of the hypothetical questions put to Drs. Day and Cheshire on cross-examination, and not allowed, were contained in former questions to which no objections were made, and for that reason it was within the discretion of the trial court to allow them to be answered or not.

4. The questions propounded to Dr. Houck were not, so far as we can discover from the bill of exceptions, properly in rebuttal. In this connection it is pertinent that we should indicate our disapproval of the manner in which the bill of exceptions was gotten up. The testimony in the case is attached thereto, marked "Exhibit A," and made a part of it, and, in stating the errors relied on, the court is referred to the testimony to determine whether they have a basis in fact. The alleged error

under discussion is a representative type, as it pertains to the manner of statement. We quote from the bill of exceptions (page 22) :

"Dr. Houck, being recalled on behalf of the plaintiff in rebuttal, was asked the following questions:

12 Q. (page 156) 'I will ask you to state if there is a small fracture. * * I will ask you to state, as a matter of fact, from your examination by looking at the. arm, visual sight, and by the aid of the X-ray whether the humerus was fractured?' The question was objected to by defendants as not rebuttal testimony, which objection was sustained by the court, and to which ruling the plaintiff excepted, which exception was allowed by the court.

13 Q. 'I will ask you to state if a fracture of that kind, if it existed, would show in the radiograph?' To which question defendants objected as case in chief, not rebuttal, which objection was sustained, to which ruling of the court plaintiff excepted, which exception was allowed by the court. Permission was again asked (page 159) to re-ask the last question above, and the same objection interposed, with the same ruling and exception."

This is all there is to indicate whether there was error or not. There is no grouping of any facts pertinent to show the bearing of the questions ruled upon by the trial court, and this court's attention is simply directed to the testimony to determine whether there is such a state of facts as will sustain or overturn the ruling. This practice has been repeatedly disapproved: *O'Connor* v. *Van Hoy,* 29 Or. 505 (45 Pac. 762) ; *Mac-Mahon* v. *Duffy,* 36 Or. 150 (59 Pac. 184) ; *Nosler* v. *Coos Bay R. Co.* 40 Or. 305 (63 Pac. 1050, 64 Pac. 855).

5. We come now to the instructions to which exceptions were saved. The first we are to notice, designated as No. 3 in the bill of exceptions, reads as follows:

"I instruct you that it was not negligence of the defendants, or lack of proper skill on their part, for them not to have an X-ray machine, or for them not to use the same in the treatment of plaintiff's arm, unless such machine was usually employed by physicians and surgeons in the same general locality in which the defendants were practicing their profession, or in similar localities."

The criticism of this instruction is twofold:   First, that it has no application to specialists, such as defendants were holding themselves out to be, in the practice of surgery; and, second, that the defendants were in doubt as to the exact nature of the injury sustained, and the proper method of adjusting the arm, and, being in doubt, they should have resolved it by calling into requisition the X-ray machine that was accessible to them.   To be understood, this especial instruction should be read in connection with others that preceded it.   These are as follows:

"The degree of care and skill and diligence required of physicians and surgeons is that care, skill, and diligence which is ordinarily possessed by the average of the members of the profession in good standing in similar localities; regard being had to the state of medical science at that time.

"As specialists of any department, the rule would be that specialists in the practice of surgery are bound to bring to the discharge of their duty in the treatment of plaintiff's arm, as such specialists, that degree of care, skill, and knowledge which is ordinarily possessed by practitioners devoting special attention and study to the same branch in similar localities, having regard to the present state of medical science.

"The care and skill that a surgeon would use in the practice of his profession should be proportionate to the character of the injury he treats, within the limits of ordinary skill and knowledge, and in the light of the advanced state of the science at the time of treatment; and if, under the evidence in this case, under the rule of law as I have given the same to you, it should appear by the preponderance of the evidence that the defendants, undertaking the care and treatment of plaintiff's arm, did not give to him the ordinary skill and knowledge which is possessed by the average of the profession making a specialty of surgery, then the plaintiff would be entitled to recover some damages at your hands, in case you should find that he had suffered any damages traceable to the fact of the neglect or unskillful treatment on the part of the defendants in the treatment of his arm."

Now, it will readily be seen that the court gave proper instructions, or at least such as were deemed proper by the plaintiff—no objection being saved thereto—as to the degree of skill that should be observed by persons holding themselves out as specialists in the practice of surgery, and it was unnecessary for it to repeat them in every instruction bearing upon the case.   As to the second ground of criticism, it does not adequately appear

from the bill of exceptions that the defendants or Dr. Kuykendall, who adjusted the arm, were in doubt, as alleged.

6. Exception is taken to another, denominated the fourth, instruction, which reads as follows:

"A physician or surgeon making a specialty of the practice of surgery is not bound to use any greater skill, care, or diligence in the treatment of the case than a specialist in the same general locality in which said physician or surgeon resides and practices his profession."

The criticism here is that the skill, care and diligence required of defendants were such as are observed in like or similar localities. The qualification might have been made with propriety: *Whitesell* v. *Hill,* 101 Iowa, 629 (70 N. W. 750, 37 L. R. A. 830) ; *Pelky* v. *Palmer,* 109 Mich. 561 (67 N. W. 561) ; *Gramm* v. *Boener,* 56 Ind. 497; *McCracken* v. *Smathers,* 122 N. C. 799 (29 S. E. 354). The court, had, however in previous instructions so explicitly informed the jury that the degree of skill required would be such as was possessed by the average members of the profession practicing as specialists in similar localities, regard being had to the advanced state of medical science at the time, that they could hardly have been misled by the instruction in question. Indeed, it should be read with the preceding instructions, and when so read there was no error.

7. The next exception is to instruction numbered 5, as designated in the bill of exceptions, which reads as follows:

"Even though no instructions were given to the patient, he is required to exercise such ordinary prudence as would be expected of a person situated in his condition, and the failure on his part to exercise this prudence would prevent recovery."

This is a mere excerpt, and, to be properly interpreted, should be read with other directions of the court in charging the jury, both preceding and succeeding it. Immediately preceding is the following:

"There is something in the complaint in regard to the plaintiff having observed the instructions given by the defendants. He alleges that he did follow the instructions, and that his injury was without contributory negligence on his part. There is some evidence in this case tending to show that the arm appears as it did when the plaintiff left the hospital, while the defendants claim that the arm presents an altogether different

appearance. This is a matter for you to determine in the case, but the rule of law is that even though"—continuing in the language. above set out, following which is this:

"If you find that the injury of which plaintiff complains was caused wholly or in part by his own acts of negligence, then he cannot recover. It is the duty of the patient to observe and follow the reasonable directions of his physician and surgeon. If the patient, after having been treated for some time by the defendants, upon going away from the place where the treatment had been given, was instructed by the defendants to return for further treatment, and was instructed by them in the proper care and use of his arm, and the plaintiff failed or neglected to return for treatment, and used his arm in a different manner than that directed by the defendants, these are facts for you to take into consideration, with the other facts of the case, in determining whether the plaintiff was not negligent."

The latter part of the instructions, commencing with the words "it is the duty of the patient," etc., is also excepted to. The basis of the exceptions to both these excerpts is that plaintiff's subsequent negligence, not contributing to produce the injury complained of, is not a ground of defense to the negligence of the defendants in the first instance, and at most it could only serve to mitigate the damages where its tendency was to enhance them. It is a good defense in an action for malpractice, where the physician or surgeon is charged with negligence or the nonobservance of proper care or the want of skill in performing the services undertaken, that the patient was negligent at the time, which conduced or contributed to produce the injury complained of; but it will not suffice to defeat the action that the injured party was subsequently negligent, and thereby conduced to the aggravation of the injury primarily sustained at the hands of the physician or surgeon, and such conduct on the part of the patient is pertinent to be shown in mitigation of damages only where enhanced thereby, but not to relieve against the primary liability: Cooley, Torts, 683; *Sanderson* v. *Holland,* 39 Mo. App. 233; *Wilmot* v. *Howard,* 39 Vt. 447 (94 Am. Dec. 338); *McCracken* v. *Smathers,* 122 N. C. 799 (29 S. E. 354); *Hibbard* v. *Thompson,* 109 Mass. 286.

8. Now, to come again to the instructions: They relate to the patient's observance of the directions given him by the

defendants. Of course, if he refused or failed to follow them, he could not complain if his negligence in that respect conduced to the injury. That is to say, if it prevented or retarded union or healing of the parts, for the directions were a part of the treatment prescribed, and a want of observance of them on the patient's part would defeat the action. It was in this connection that the court charged that the patient was bound to the observance of ordinary prudence, even without instructions from the surgeon. The want of ordinary prudence would be tantamount to negligence, and, if it was a contributing cause to the injury, the case would be within the rule. This much is conceded, for the court told the jury that if they should find that the injury of which the plaintiff complains was caused wholly or in part by plaintiff's own acts or negligence, he cannot recover, to which no exceptions were saved. Plaintiff does except, however, to what follows, but by reading the whole together, the purpose of the instructions is apparent. They were intended to advise the jury as to the effect of a nonobservance of the directions of the defendants in the treatment of his arm or of ordinary care and prudence, which was enjoined upon him without their directions, and there was no attempt to advise the jury as to any conduct of the plaintiff that might operate in aggravation of the injury of which he complains.

9. The court was not requested so to instruct, and we are not advised by the bill of exceptions that the question was in the case. There are no pertinent or sufficient facts set out in it to show the relevancy of such an instruction, and it is not for this court to survey the entire testimony to determine whether one should have been given.

Having examined the various assignments, and finding no error, the judgment of the circuit court is affirmed.

                                                          . AFFIRMED.

MR. JUSTICE BEAN took no part in this decision.