Argued March 13, affirmed July 11, 1928.

## MAUDE RAYBURN *v.* FLOYD M. DAY.

(268 Pac. 1002.)

138

For appellant there was a brief and oral argument by *Mr. H. E. Slattery.*

For respondent there was a brief and oral argument by *Mr. Charles A. Hardy.*

ROSSMAN, J.—The assignments of error are based upon the admission and exclusion of evidence, and instructions to the jury. In order to facilitate the disposition of these assignments of error it will be helpful if we bear in mind the following undisputed facts: the plaintiff, a woman forty-three years of age, consulted one Dr. R. H. Fields, a physician engaged in his practice in the City of Eugene. About July 11th, Dr. Fields called in consultation the defendant: the two physicians concluded that the plaintiff had an infection of the pelvic region of the body; they advised her that a surgical operation was necessary. This was performed July 14th by the defendant, aided by Dr. Fields: a competent nurse administered the anaesthetic and a graduate, experienced, nurse assisted the defendant. Two other nurses were present, one of whom supplied the surgical sponges and other appliances from the hospital stores, and the other performed the menial chores. As a witness the defendant described the condition of the plaintiff's pelvis region as follows:

"I found all the pelvic organs all grown together in a mass and the intestines, both the large and the small intestines were all grown—all attached to this mass. And the first thing was to dissect free the intestines, get them away from this mass. She had what we call double pus tubes, both the Fallopian tubes were abscessed and the right ovary was entirely destroyed, the right ovary and tube was a mass of abscesses that as I said would hold a quart of pus, just filled the whole pelvis, and the uterus itself was full of fibroid tumors, probably fifteen or twenty of them, and I don't know how many more in the uterus and of course in dissecting them and the intestines from this abscess and freeing them from the broad ligament—in this process the abscess was ruptured; you see the intestines and the other organs form a part of the wall of the abscess and the abscess forms inside of that, and just for instance, when you dissect off the intestines from that, you usually open into the abscess and that is what happened in her case and this pus was mopped out—sponged out— by the use of sponges and in an operation of that sort, we usually use two kinds of sponges, two sizes of sponges. We have a large lap sponge, which we call lap sponges, sixteen or eighteen inches long and perhaps eight inches wide that are packed into the abdomen to hold the intestines away, and then the smaller sponges—we have an instrument we call a sponge stick or forcep—it is a long forcep with which we can grasp the sponge and put it down in the bottom of the cavity and sponge out the moisture, blood, or pus, or whatever may be in there, and altogether I suppose there were around, I expect, eight dozen sponges used. There were two small sponges, these sponges about eight inches long and five or six inches wide and composed of four or five thicknesses of gauze. There were two of these small sponges packed in the place in the abdomen, the rest of the small sponges that were used on the sponge sticks or sponge forceps. After freeing the tubes and the uterus and the ovaries, this pus cavity was all

swabbed out and cleaned out, and then we removed both pus tubes and also the uterus—the womb—the womb, as I stated, contained multiple fibroids, probably fifteen or twenty fibroid tumors were scattered all through the substance of the uterus and all of these—all of this work took considerable time and more or less shock. It is a big operation and we always work as fast as we can to save time, still at that, it took a matter of two hours or more, I think, to complete this operation. And finally the organs were all removed, the abscess wiped out—sponged out—and removed and we started—the sponges—the large sponges and the small sponges were taken out and we started to close the abdomen, and at this time, it is always customary for them to make a sponge count.''

At this point one of the nurses suggested that she believed one of the sponges was missing. What followed after this remark was stated by the defendant in the following language:

''We always make a mental note when they put a big sponge in, or two big sponges or three big sponges, * * —I always keep them in my mind and when they are taken out * * and we were all three confident there was not a sponge left in the abdomen, or we did not put any sponges in there. We had counted out all the sponges we had put in, and we had only used two small sponges in the abdomen. All three of us, Miss Turner, Doctor Fields and myself, were all confident this sponge had not been used, but notwithstanding I opened the wound again and put my hand into the abdomen and felt around and made a hurried examination, but did not find any sponge, could not feel any sponge or anything abnormal and made the remark that we would have to hurry up and get this patient off the table and resuscitate her and so I went on and closed the wound excepting that we put in drainage. * * Well, on account of the condition of the patient and the length of time that she had been undergoing this

operation, the amount of work there was connected with the operation, the patient had been getting in a —in bad shape and it was time that she was taken off, the anaesthetic stopped and resuscitation begin. Q. After she had been on the table two hours and subjected to this heavy operation what was your best judgment, whether there could be a sponge there or not, as to whether or not you ought to carry the operation further with regard— A. Well, it was absolutely essential that we should not carry on any further—if there had been a sponge left in there—if I had known there was a sponge left in there, I would have left the sponge at that time, if I could not have found it conveniently—I would have left the sponge there temporarily and removed the sponge later. Q. Even if you had known it was there? A. Even if I had known there was a sponge in there, but we all connected with the operation were confident in our own minds there was not any sponge left in there. * * She had undergone a heavy operation, when you remove one ovary and both Fallopian tubes and a large abscess and the womb complete in a case like that, and being a couple of hours under the anaesthetic, it is time to get that patient out of there, and this patient especially. She was in bad shape. She had stood just about all that she could stand, and it was time to take her out and it is up to me. It is my business to say whether I shall stop this operation this minute, or carry it on half an hour longer or ten minutes longer, and I acted on what I thought was my best judgment in her case, and my judgment told me to stop that operation right then and close up the wound and stop the anaesthetic, and put her to bed and resuscitate her."

The testimony of Dr. Fields, and the assisting nurse was to similar effect. Dr. Fields added the observation that the defendant applied himself diligently and skillfully to his task. He and the nurse testified that all three used these sponges to mop up the pus released when the large abscess broke.

In the following excerpt from his testimony Dr. Field expressed what he said and did when the suggestion was made that all the sponges had not been removed:

"I said there was not a sponge in the abdomen. Of course, naturally when someone would express a doubt or say there is a sponge short, the important question is whether that sponge is somewheres else or in the patient, I said that we could not have left a sponge in the patient, everything that had been put in there had been removed. Q. You made that as a positive assertion? A. Yes, sir."

The witness added that the defendant had closed the inner lining of the abdomen, but that he loosened the sutures and inserted his hand into the incision and made a hurried search to ascertain whether a sponge remained in the abdomen, but finding none said that it was necessary to resuscitate the plaintiff as quickly as possible; that he, the witness, concurred in this conclusion. All agree that the operation had continued for at least two hours, and that it was a major one, which subjected the patient to a severe shock. The defendant contended that whenever an infected condition of the pelvic region similar to that of the plaintiff is found, a secondary operation is always to be expected, and sometimes a third and fourth are necessary before the conditions creating pus are entirely eliminated. The plaintiff would not have known that a sponge remained in her body had not the defendant upon the day following the second operation informed Mr. B. F. Mulkey, her brother-in-law, to that effect.

■ A greater degree of skill is exacted by the law of the medical practitioner who specializes in any branch of his profession, as for instance surgery, than of the physician who engages in general practice: *Beadle* v. *Paine,* 46 Or. 424 (80 Pac. 903); 21 R. C. L., Physicians and Surgeons, § 32; *Rann* v.

*Twitchell,* 82 Vt. 79 (20 L. R. A. (N. S.) 1030, 11 Atl. 1045); *Coleman* v. *Wilson,* 85 N. J. Law, 203 (Ann. Cas. 1915D, 1122, 88 Atl. 1059). The court in appropriate language instructed the jury to the foregoing effect.

■ ■ When the plaintiff was upon the witness-stand, her counsel inquired of her: "Did he make any statement to you in either of these conversations with reference to the fact that he had left a sponge in a patient one time, and about what he did as soon as he thought of it?" The court sustained an objection to this question, whereupon plaintiff's counsel stated that the witness would have responded with the following answer: "While we were talking about the fact that he had left a sponge in her body he said, 'I did that once, I thought about it afterwards and went right back and opened him up quick and got it out' "; plaintiff's counsel explained that the use to which he would apply this rejected information would be, that he would seek to have the jury draw from it an inference that the defendant thereby admitted it was not proper practice to leave a sponge in a patient. When the witness, Mrs. Mulkey, a sister of the plaintiff, was upon the witness-stand she related a conversation which occurred when she visited the defendant. In the course of her narration she testified: "He says, 'This is the second time this happened to me in twenty-four years' practice.' He says: 'A nephew I operated on' * * " At this point the defendant interposed an objection which was sustained, but the court did not instruct the jury to disregard what the witness had already said. The plaintiff contends that the court erred in each of the foregoing instances. A party cannot establish his opponent's negligence by offering proof that at some other time he committed a similar act; similar accidents occasioned

by a party at another time are not admissible to show his negligence upon the occasion under inquiry: *Davis* v. *O. & C. Ry. Co.*, 8 Or. 172; Chamberlayn on Ev., § 3209. Plaintiff apparently concedes that the preferred testimony was inadmissible to prove negligence, but argues that the answer, if received, would have afforded a foundation for an inference that the defendant thereby admitted that the sponge left in plaintiff's body violated the established practice. The defendant nowhere contended that the act complained of constituted good practice. As we have already seen he removed the sponge the moment he discovered it. In addition he and his witnesses testified to the precautions which they took in an endeavor to render certain the removal of all sponges which they placed in her abdomen. In fact the defendant testified that had he known a sponge was left in the incision he would have removed it; thus on direct examination he testified: "I would have left the sponge there temporarily and removed the sponge later." After he had partially closed the incision and someone suggested a sponge was missing, the defendant removed the stitches, made a hurried examination in the plaintiff's abdomen, and a recheck was made of all used sponges. Here again we see that the defendant was conceding that he owed a duty to remove all sponges. It is true that the defendant and his witnesses testified that a sterile sponge could be left in the body for a period of time without doing harm, unless it pressed against and crowded some organ. But this falls short of contending that leaving a sponge in the body constitutes good practice. No one contended that good practice embraced leaving a sponge in the incision, but all testified to the contrary. Thus Dr.

G. I. Hurley, one of the defendant's witnesses was asked:

"Q. You would not consider it good practice to perform a surgical operation and sew up the abdomen containing a sponge like I showed you there, Exhibit A? A. No, it is not regular practice in surgery, of course."

Dr. William Kuykendall, another witness for the defendant, was asked:

"You don't claim it is good practice for him to sew up a sponge like that in the body of the patient. A. I would not do it as a matter of choice."

All of the witnesses testified that a used sponge would be a source for the propagation of pus. In its instructions to the jury the court made it clear that the defendant owed a duty to exercise reasonble care and diligence in removing all sponges from the incision. While the answer would have been useable for the purposes to which the plaintiff sought to apply it, nevertheless since it developed upon the defendant's proof that he did not contend that leaving a sponge in the body was good practice, the court committed no reversible error when it sustained the objection.

■ ■ When the defendant was upon the witness-stand he testified to the routine procedure that was adopted between himself and his assistants in the handling of the sponges. As he was completing his description of this matter he added: "It is not my business to keep track of the sponges; still in working along with the patient I always keep an idea * * ." At this point the plaintiff moved to strike the portion of the answer which we have just quoted. Before the court ruled, it inquired of defendant's counsel: "I presume he means someone else does the counting." The reply was, "Yes." Thereupon the

motion was denied. When the defendant entered into his undertaking to perform the surgical operation a contractual relationship arose between himself and the plaintiff; she agreed to pay, and he agreed to render professional services. These services included not merely the exercise of skill in the application of the surgeon's knife, but also skill in the use and final removal of all surgical sponges. Not until all of the latter had been properly removed was his undertaking completed. *Palmer* v. *Humiston*, 87 Ohio St. 401 (101 N. E. 283, 45 L. R. A. (N. S.) 640) (cites and reviews two other cases to similar effect). It follows from the foregoing that the defendant could not rid himself of any part of this duty by disavowing responsibility for it in his answers as a witness. But we do not believe that such was his purpose when he made the foregoing answer. No doubt, before he and his assistants entered upon the performance of their task they effected a distribution among themselves of the labors entailed in the work that lay before them: he to use the knife, another to keep count of the sponges, etc. His answer, we believe, was intended only to delineate this division of labors within the group, but was not expected to rid himself of any portion of his responsibility to his patient, which included the exercise of due care in the final removal of all sponges. But the defendant's undertaking did not contemplate that he must necessarily be the one who should count the sponges; the welfare of his patient might demand his attention to something which required greater skill than this important but routine task. The court's instructions properly placed the responsibility upon the defendant for the exercise of due care in the removal of all the sponges. No error was committed when the court

permitted the defendant to testify as above to the distribution of duties within the group.

In her next assignment of error the plaintiff contends that the Circuit Court erred when it sustained an objection to the following question which was put to the witness Mr. B. F. Mulkey: "In his stating to you the cause of her second operation, did he mention to you that there was a secondary abscess or pus pocket?" When the objection was sustained, counsel for the plaintiff stated that had the witness been permitted to respond, his answer would have been in the negative. The above incident occurred while the plaintiff was offering her rebuttal testimony. Mr. Mulkey had previously testified while the plaintiff was offering her case in chief. At that time, he related a conversation which occurred between himself and the defendant the next morning after the second operation; while repeating this conversation the question was put to him: "Go ahead and tell all that was said." He then stated in detail the conversation. Later the defendant became a witness in his own behalf and briefly related his version of the foregoing conversation. Later, on cross-examination, counsel for the plaintiff asked the defendant: "Well, you did not tell him in that conversation anything about this secondary pus pocket, did you?" A. "Yes." This instance constitutes the only mention made by the defendant of the secondary pus pocket during his relation of the conversation which occurred between himself and Mr. Mulkey. Upon rebuttal counsel for the plaintiff asked the question which we have previously set forth upon which the assignment of error is grounded. When the court sustained the objection, it ruled that Mr. Mulkey had given his version of the conversation

and Dr. Day had done likewise. It was not mistaken in its recollection of the testimony: it remained for the jury to compare the two sets of statements and then conclude whose version it would accept. Apparently the court felt that a repetition by Mr. Mulkey of his previous statement would not be helpful to the jury in the performance of this task. The court committed no error in this ruling.

■ ■ It will be observed from the evidence which we have set forth that before the defendant had completed the task of closing the incision, one of the attendants declared that a sponge was missing; that thereupon the incision was opened, a hurried search was pursued, and a recheck of the sponges was made. The missing sponge was not found, but the result of the recheck, the interchange of observations and the hurried search, seemed to persuade all that none was actually missing. At this point the defendant declared that the time had come when the plaintiff must be resuscitated. This involved the formation and exercise of a matter of judgment. Upon this subject the court instructed the jury as follows: "If a physician with reasonable diligence employs the skill with which he is possessed in the performance of a surgical operation, he is not liable for an error of judgment * * I instruct you that the defendant is not liable for mere error of judgment; if such judgment is based upon the exercise of reasonable care and skill, and in this connection I instruct you that if you find from the evidence that the attention of the defendant, Dr. Day, was called to the possibility of the one sponge being short or missing, and if in the exercise of his judgment, if he did exercise his judgment, he ceased to explore the body of the patient for the sponge, after making such examination

as he deemed prudent, if he made such examination, and if you find. that the defendant in good faith decided to make no further exploration and search at that time for the reason that he considered such search might endanger the life of the patient, then he had a right to act upon his own judgment and no negligence could be inferred therefrom providing he exercised reasonable care and skill. * * If you find that the defendant exercised his judgment based upon the exercise of reasonable care and skill, if he did, in the matter of his examination of the patient's body to ascertain if all sponges were accounted for, then he was not guilty of negligence and plaintiff could not recover, but if he failed to exercise reasonable care and skill, then I instruct you that the defendant would be liable and your verdict should be for the plaintiff.'' The court had previously defined negligence, and had told the jury that since the defendant held himself out as a specialist in surgery, it was his duty to exercise that degree of diligence, care and skill in his treatment of the plaintiff ordinarily employed by specialists in surgery in localities similar to Eugene.

The defendant excepted to a portion of the foregoing instructions which stated the law applicable to the exercise of judgment by a surgeon. It is well settled that instructions are to be considered as an entirety, and that an appellant cannot dissect the mass of instructions, and finding a paragraph which displeases him, ask the court to blindfold its eyes to all of the remaining portions and pass upon the one sentence alone. Hence, in determining whether error was committed, we must consider all of the foregoing. There has been before this court on several previous occasions the same problem that is

presented by the plaintiff's foregoing exception. In *Emerson* v. *Lumbermen's Hospital Assn.*, 100 Or. 472 (198 Pac. 231), this court said:

"The doctrine enunciated by the precedents is, that if a regularly licensed physician with reasonable diligence employs the skill of which he is possessed in treating a surgical case, he is not liable for an error of judgment, and the fact that an unfortunate result follows, is not in any way evidence of neglect."

In *Lehman* v. *Knott*, 100 Or. 59 (196 Pac. 476), this court said:

" * * Improper treatment by a surgeon might be due to an error in judgment of a skillful surgeon honestly and carefully exercised, and not constitute negligent treatment. * * "

In *Hills* v. *Shaw*, 69 Or. 460 (137 Pac. 229), the court said:

" * * The substance of the doctrine taught by these cases is that if a regularly licensed physician with reasonable diligence employs the skill of which he is possessed in treating a surgical case, he is not liable for an error of judgment, and that the mere fact that an untoward result ensues is not in any sense evidence of negligence. There are so many elements combating the surgeon in his efforts to restore a patient to bodily soundness that he can do no more than exercise his best skill and judgment to accomplish the desired result. * * "

And in *Langford* v. *Jones*, 18 Or. 307 (22 Pac. 1064), the court said: "He did not undertake, in his treatment of the respondent's case, that his judgment was infallible; he only agreed to exercise his best judgment." In 21 R. C. L., Physicians and Surgeons, Section 35, the editor said:

" * * With respect to matters resting on pure theory, judgment, and opinion, however, there is a generally recognized variation from this sound general principle. If a physician brings to his patient care, skill and knowledge he is not liable to him for damages resulting from a *bona fide* error of judgment of which he may be guilty. The law may require a physician to base any professional decision he may make on skill and careful study and consideration of the case, but when the decision depends on an exercise of judgment, the law can further require only that the judgment be *bona fide*. So the cases have settled it that a physician is not an insurer of the correctness of his judgment. It is obvious that an exercise of judgment is not really *bona fide* and is no protection to him, unless it is founded on his intelligence, skill, knowledge and care. And an error of judgment may be so gross as to be inconsistent with the use of that degree of skill and care that it is the duty of every physician and surgeon to bring to the treatment of a case."

The plaintiff's exception to the court's instruction was: "We except to the instruction of the court that the defendant would not be liable for error of judgment." The exception having been no more specific, we believe that the court fairly instructed the jury upon the principles of law applicable to the problem before them.

■■ The plaintiff requested the court to instruct the jury as follows:

"In her complaint, the plaintiff charges that in the performance of the operation the defendant inserted the sponge described in the complaint into the wound and that he sewed up the wound without removing the sponge and permitted the wound to heal with the sponge remaining in her body, and the defendant avers in his answer that it was necessary for him to use surgical sponges in the course of said operation. You are hereby charged that the use of

the sponges constituted a part of the operation just as much as the opening of the body with the knife; that the operation begins with the beginning of the opening of the body, and ends when the opening has been closed; and that the use of the sponge during the course of the operation constituted a part of the operation; and that the proper removal of the sponges from the body was a part of the operation." And also as follows:

"The removal of the sponge was a part of the operation, and if the defendant failed to remove the sponge, he left the operation uncompleted so long as the sponge remained within the body of the plaintiff."

In *Palmer* v. *Humiston*, 87 Ohio St. 401 (101 N. E. 283, 45 L. R. A. (N. S.), 640), the court after a review of the authorities, concluded that when a surgeon agrees to perform an operation the employment which he undertakes is not only to use the knife, but also to remove all sponges before finally closing the incision.

■ The lower court with profit to the jury, might have defined the defendant's duty to his patient in language similar to that suggested by the first portion of the requested instructions, but the concluding clause of each request possesses a potency for misleading a jury. A failure to remove a sponge would not in all instances constitute a breach of the surgeon's duty to use due care: if such was its essential effect, there was no need to take testimony in this case, because the defendant admitted that he left the sponge in the incision. Yet the concluding portions of each proposed instruction, if given, might have created in the mind of the juror the conception that the defendant owed an absolute duty to remove all sponges, that a sponge left in the incision constituted a breach of that duty, and that such a breach would

render the defendant liable in this tort action. *Gillette* v. *Tucker,* 67 Ohio St. 106 (65 N. E. 865, 93 Am. St. Rep. 639), *Akridge* v. *Noble,* 114 Ga. 949 (41 S. E. 78), and *Palmer* v. *Humiston, supra,* which are relied upon by the plaintiff contain general statements to the effect that the surgeon's contract duty is an absolute one to remove all sponges, but they also make it clear that when a tort action is founded upon a contract duty due care is all that the law exacts of the physician. Evidently the plaintiff's purpose in requesting the above instructions was to have the jury understand that the defendant's duty included that of removing sponges. The court instructed the jury that the removal of sponges was within the realm of his duty. Thus it instructed the jury:

"I instruct you that it was the duty of the defendant to perform such operation in a careful, diligent and skillful manner, and you are instructed that this duty could not be delegated by the defendant to another person, and you are further instructed that it was the defendant's duty to use reasonable care, skill and diligence to see that the sponges were correctly removed from plaintiff's body. * * I instruct you that if the defendant did delegate the duty of counting and removing the sponges to another person, and if you further find that such person was negligent in counting and removing the sponges from plaintiff's body, and that this negligence, if there was negligence, was the proximate and direct cause of plaintiff's contention, then I instruct you the defendant would be liable."

And we have previously seen from an instruction which we have already quoted, the court again mentioned the subject of sponges when it instructed upon the law governing the exercise of judgment. We believe that the court did not prejudice the plaintiff's

rights when it failed to give the foregoing requested instructions, and that no error is revealed by this assignment.

■ Plaintiff assigns error in the failure of the court to give two more of her requested instructions, but nevertheless it gave the substance of them and fully conveyed to the jury the principles of law enunciated in these two requested instructions. It is not necessary that the court should adopt the phraseology of a requested instruction; it is sufficient if it correctly conveys to the jury an understanding of the principles involved.

■ In his brief the counsel for plaintiff contends that the doctrine of *res ipsa loquitur* applies to a situation of this kind, and that when it is established that a surgeon has closed the incision leaving a sponge inside his patient, the jury is justified in inferring the existence of negligence. This would present an interesting question had the plaintiff tendered to the Circuit Court a requested instruction based upon this principle of law. But since no exception was saved which presents this problem to us, it is merely a moot question and calls for no decision upon our part.

To the two remaining assignments of error we have given careful consideration: we believe that they are without merit. It follows that the judgment of the Circuit Court is affirmed.                 AFFIRMED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.