Argued March 5, affirmed July 25, petition for rehearing
denied. September 17, 1968

BROCKMAN, *Appellant, v.* HARPOLE ET AL,
*Respondents.*

444 P. 2d 25

*David H. Fertig,* Portland, argued the cause for appellant. With him on the briefs was Gerald H. Robinson, Portland.

*George M. Joseph,* Portland, argued the cause for respondents. With him on the briefs were Morrison & Bailey, and Robert H. Hollister, Portland, and Schwenn, Bradley & Batchelor, and Willard C. Schwenn, Hillsboro.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

The plaintiff alleged that Terry McWilliams, a nurse employed in the office of the defendant doctors, Harpole and Manion, punctured the plaintiff's ear drums in the process of washing wax from his ears. Plaintiff sued both doctors and the nurse for malpractice. The jury found for all defendants, and plaintiff appeals.

Plaintiff contends (1) that the court erred in submitting to the jury the charge made by the nurse that plaintiff was contributorily negligent, and (2) in refusing to give a requested instruction on *res ipsa loquitur.*

■ Since the jury found for the defendant McWilliams, we must view the evidence bearing on the issue of contributory negligence in the light most favorable to her. There was evidence tending to prove the following facts. The plaintiff was a 39-year-old salesman, who had a childhood history of earaches and whose ears would occasionally become plugged with wax and require washing. On at least three prior occasions his ears had been washed in a doctor's office after con-

sultation with a physician. One of the physicians had advised plaintiff to have his ears washed out every few years.

On January 17, 1964, plaintiff went to the office of defendants Harpole and Manion to have the wax washed from his ears. The defendants offered evidence that plaintiff had no appointment, although he testified to the contrary. In any event, he arrived at the office about 10:00 a.m., and told the receptionist that he wanted to have his ears washed. The receptionist told him that both doctors were still at the hospital and that his ears could not be washed until a doctor had looked at them and given instructions for the washing. According to the receptionist plaintiff said "it was a perfectly simple procedure to have his ears washed, that his time was valuable and he saw no particular reason to have to wait until such time as a doctor would come in, that a nurse was perfectly capable of washing ears." The receptionist further testified that plaintiff was "adamant" that he be treated right away, and that she relayed his request to the nurse, Mrs. McWilliams.

Mrs. McWilliams took plaintiff to the laboratory and told him that the doctors were not in and that she usually didn't wash a patient's ears until the patient had been seen by a doctor. According to McWilliams plaintiff insisted that:

"A * * * he had to have his ears washed and he kept demanding this. I mean we argued back and forth, and - - -

"Q You were arguing with him, is that right?
"A Yes. I said, 'Well, couldn't you come back at another time when the doctors are here?'"

The nurse further testified that after arguing with plaintiff for a while she agreed to wash his ears if he

would let the doctor check his ears before he left. She then put some drops in his ears to soften the wax and then undertook to wash them. During the washing plaintiff complained of pain and the nurse stopped the procedure. About that time the doctors returned and looked at plaintiff's ears and found that both ear drums were apparently ruptured. Plaintiff was referred to a specialist, who confirmed the diagnosis.

■ In summary, the jury could have found that plaintiff, who because of his prior experience had decided that it was time to have the wax washed from his ears, appeared at the doctors' office without an appointment and persuaded the nurse, over her protest and against her better judgment, to wash the wax from his ears without waiting for an examination by a doctor. We think this evidence amply supported the charge of contributory negligence, and that the trial judge did not err in submitting that issue to the jury. *Wemett v. Mount,* 134 Or 305, 316, 292 P 93 (1930); *Beadle v. Paine,* 46 Or 424, 431, 80 P 903 (1905).

■ We also hold that the court did not err in refusing to instruct the jury on *res ipsa loquitur*. The requested instruction was based on the assumption that the sole cause of plaintiff's injury was the use by the nurse of excessive pressure in forcing water into plaintiff's ears with the syringe. If plaintiff's ears had first been examined by a physician, the washing might not have been undertaken, or might have been done under different circumstances. The requested instruction ignores this latter aspect of the causation question.

The judgment of the court below is affirmed.