SPICER, P.J.,
In this medical malpractice suit, we are asked to preliminarily determine the admissibility of evidence relating to the doctor’s prior treatment of plaintiff. Following a pretrial conference in which the evidence was discussed, plaintiff filed a formal offer of proof and defendant entered a motion in limine to exclude the evidence.
For purposes of this rule, the court accepts as true assertions made both in the offer and in plaintiff’s brief. For example, we assume that plaintiff will be able to prove that certain side effects of medicines involved in this case were known by members of the medical profession generally, and were or should have been known by defendant.
*574 We deal with two drugs, hydrochlorothiazide and capoten. We will refer to them as medicine A and medicine B. When we refer to plaintiff, we mean Craig Strevig.
Defendant treated plaintiff for hypertension during the period beginning October 17, 1983, and ending October 8, 1984. During this time defendant prescribed medicine A, a known side effect of which involves the loss of potassium, which can result in a condition called hypokalemia. Defendant did not monitor plaintiff’s condition by use of blood analy-ses. On the last mentioned date, plaintiff was admitted into the Hanover General Hospital and diagnosed as suffering from this disorder.
There is no mention of any medicine being prescribed until March 10, 1986. From that date until November 30, 1987[1], defendant treated plaintiff with a more potent drug, medicine B.
After plaintiff complained of vertigo, bruising, palpitations after light exercise, minor bleeding and headaches, a blood analysis was ordered. It was then determined that plaintiff suffered from pancy-topenia, which was caused by medicine B. This condition is a form of aplastic anemia and treatment required a marrow transplant.
Plaintiff argues that his treatment involving medicine A and the resulting hypokalemia is both relevant and admissible. He contends that his adverse reaction to medicine A placed defendant on notice that blood monitoring was required for medicine B. He also argues that the treatment is part of a general course of conduct which is relevant on the issue of negligence.
Defendant, on the other hand, argues that (1) the two periods of treatment are not causally, logically *575 or temporally connected, (2) medicine A is of entirely a different chemical composition than medicine B and (3) introduction of a collateral issue would confuse a jury and prejudice defendant.
Both parties agree that evidence of prior conduct is generally not admissible. There are some recognized exceptions, mainly dealing with notice, intent, conditions and the like. A good many have developed in the criminal field and, although the-degree of caution is not the same, similar principles are applied in civil cases. Relevance is always balanced against possible prejudice and confusion. Packel and Poulin, Pennsylvania Evidence, §405.3.
Cases are instructive concerning principles that when evidence relates to a particular purpose, the jury must be instructed accordingly. For example, in Carter by Carter v. U. S. Steel Corporation, 390 Pa. Super. 265, 568 A.2d 646 (1990), the court was required to inform the jury that evidence of a similar accident was to be considered only in determining if a dangerous condition existed.
Prior conduct is generally admissible to prove notice, as plaintiff contends. In Henderson v. National Drug Company, 343 Pa. 601, 23 A.2d 743 (1942), a number of patients developed abscesses after a doctor had given them shots. Evidence of problems caused by shots given to other patients was admissible to show that the doctor was placed on notice about the effects of the treatment. See also, Parrish v. Clark, 107 Fla. 598, 145 So. 848 (1933). Knowledge, which is quite akin to notice, can also be shown. A case cited by plaintiff, Adams v. Dunn, 283 Or. 33, 581 P.2d 939 (1978), is illustrative. A physician failed to diagnose appendicitis in a young patient. He testified at trial that he had never encountered symptoms such as those manifested by the decedent. Judgment was entered in his favor. *576 Thereafter, another parent informed plaintiff that the doctor had been previously confronted with almost identical symptoms in another young patient and had missed appendicitis in his diagnosis. A new trial was ordered on the basis of after-discovered evidence.
On the other hand, the iule is often repeated that prior negligence does not prove negligence.[2] The Supreme Court, in Henderson, supra, repeated the rule that proof that a surgeon previously left sponges in patients is not relevant to the issue of whether a sponge was left in a particular situation.[3]
The issue involves a balancing of relevance against prejudice and confusion. We first consider relevance.
We agree with defendant that there is no causal or temporal connection between the two treatments. Plaintiff has not contended that medicine A contributed to pancytopenia. Use of medicine B requires no reference to medicine A. There is no suggestion that characteristics of and reaction to the medicines are similar. There was a hiatus of over a year when no medicine was prescribed.
The real question is whether there is a logical connection. One might think that lack of blood monitoring and bad side effects were common to both periods and that, since the same patient was involved, the jury should be given the details about the first treatment. On the other hand, a fact finder would have to determine that the first failure to *577 monitor was negligent in order to make that treatment germane. Trial would then involve two issues of negligence.
We feel that one cannot logically assume that, since medicine A caused a side effect, medicine B would also, unless (1) there is a principle or rule commonly accepted in the medical profession that all medicines for hypertension cause deleterious side effects, or (2) there is a similar rule that a particular patient who suffers side effects from one medicine for hypertension is more likely than not to suffer side effects from another medicine for the same condition.
If there is a commonly accepted rule that any prudent physician will, for the benefit of his patient, monitor that patient’s condition through blood tests, the first treatment is superfluous. It would seem to make no difference whether the physician fails in the duty once, twice or more often.
Plaintiff has not brought to our attention any commonly accepted principles which would make the evidence relevant. We are not in a position to precisely determine prejudice and confusion at this stage. We assume it would be mild. However, another issue of negligence obviously would complicate the trial process. If the evidence were relevant, we would allow it. Since we determine it to be irrelevant, we rule that it is inadmissible.
ORDER OF COURT
And now, December 18, 1990, defendant’s motion in limine is granted.

. This date is determined by reference to other parts of the record as are some of the facts hereafter recited.

. The rule does not apply to strict liability where similar accidents can prove defectiveness of a product. Majdic v. Cincinnati Machine Company, 370 Pa. Super. 611, 537 A.2d 334 (1988).

. We suppose if enough sponges were left, the practice may become admissible under a theory of habit.