Argued January 12, affirmed February 15, 1973

MARSHALL, *Appellant, v.* MARTINSON ET AL,
*Respondents.*

506 P2d 172

*William F. Schulte,* Portland, argued the cause for appellant. With him on the briefs were Van Natta & Petersen, St. Helens.

*George M. Joseph,* Portland, argued the cause for respondents. With him on the brief were Bemis, Breathouwer & Joseph, Portland.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

HOLMAN, J.

Plaintiff brought an action for damages which resulted from personal injuries suffered in a two-vehicle accident. Judgment was entered pursuant to a jury verdict in favor of defendants and plaintiff appealed.

The accident occurred after dark on the Columbia River Highway near Bonneville. Both vehicles were traveling west. At the scene of the accident the highway is composed of two lanes each for eastbound and westbound traffic. The eastbound and westbound lanes are widely separated by tracks of the Union Pacific Railroad.

The pickup truck in which plaintiff was riding as a passenger was traveling in the northern lane of westbound traffic and was overtaken by an automobile in the southern lane, which was being operated by defendant Martinson. Defendant Bailey, who owned the automobile, was riding as a passenger.

The issue is which of the two lanes of traffic was the site of the collision. The driver of each vehicle claims he was in his own lane of traffic when the right front side of defendants' vehicle came in contact with the left front side of plaintiff's pickup truck. Plaintiff contends Martinson lost control of his vehicle when it glanced off the left-hand, or south, guardrail at a point approximately 1,180 feet east of the scene of the accident. Much trial time was taken up attempting to prove or to disprove whether it was defendants' vehicle which had left a mark on the guardrail at that point.

█ It is first contended by plaintiff that, because Martinson failed to exercise a proper lookout for plaintiff's vehicle as he overtook and passed it, the trial court erred in not ruling that Martinson was negligent as a matter of law. Plaintiff bases her assertion that Martinson was not keeping a proper lookout on the testimony given by Martinson that he was concentrating his vision on the guardrail to his left and was not looking at plaintiff's pickup truck at the

time the two vehicles came together. Martinson also testified as follows:

> "Q. And could you tell us where, in terms of time or distance, from the point where the two cars collided you began to first concentrate your attention on that guardrail?
>
> "A. Well, I believe after I'd—the vision of the pickup had gone from my right, this is when I started looking to my left front.
>
> "Q. All right. By that time then you had begun to overtake or had, in fact, overtaken the pickup?
>
> "A. Yes.
>
> "Q. And it was proceeding out of your line of vision to your right?
>
> "A. Yes.
>
> "Q. And at that point, you were some twelve to eighteen inches from the guardrail on your left?
>
> "A. Yes."

Whether Martinson kept a proper lookout for plaintiff's vehicle was a matter for the jury.

■ Plaintiff next contends that the court erred in giving an emergency instruction. This court has frowned upon the giving of an emergency instruction in most situations because it is nothing more than an elaboration on the usual common law negligence instruction that a person is held to the duty of acting as a reasonably prudent person would act in the same or similar circumstances. Because it is nothing but an elaboration, this court has seldom found a situation in which it thought anyone was prejudiced by the giving of the instruction except in instances where it found as a matter of law that the driver's own negligence brought about the emergency. It is arguable that the instruction had application to the testimony given

by Martinson that, upon impact of the vehicles, he turned the automobile he was operating sharply to the right to avoid hitting the left-hand guardrail. The manner in which Martinson steered his vehicle after the impact could have been relevant to a subsequent collision which took place with the right-hand guardrail by both vehicles. In any event, the instruction could not have been prejudicial.

■ It is further contended by plaintiff that her motions for a directed verdict and a new trial based upon the denial of the directed verdict should have been granted since Martinson's testimony that the accident occurred in the left-hand lane was not believable. She argues that the uncontroverted physical facts make his version of what happened an impossibility and that there was no evidence to justify a verdict for defendants. Skid marks commenced opposite each other in each vehicle's respective lane of traffic. Plaintiff assumes that, because these skid marks were in each vehicle's respective lane, the accident did not occur at the location where the skid marks commenced but, rather, where those marks which commenced in the left-hand lane went into the right-hand lane. This assumption is made despite the lack of evidence that plaintiff's driver at any time applied his brakes before the collision. Because the testimony of plaintiff's driver is compatible only with his having had no advance notice that an accident was going to occur, the inference is he did not apply his brakes. The skid marks may not have been made from the opposing wheels of each vehicle moving ahead in a forward position in its own lane of traffic but may have resulted from tires sliding sideways as the vehicles slid sideways or revolved.

■■ Plaintiff's assumption that the accident could

not have happened in defendants' lane of traffic is allegedly based on the laws of physics and the deductions of experts. The proper application of the former and the propriety of the latter are controverted. The jury is free to disbelieve the opinions of experts, and, although the laws of physics are incontrovertible, before the result of their application is beyond dispute, all possible relevant facts which can affect the result must be considered and be free from variables. This is not so in the instant case. As an illustration, plaintiff assumes that, since the vehicles ended up on the right edge of the road, defendants' vehicle, which was traveling at the faster speed and had the major thrust, was traveling toward the right at the time of the impact. Plaintiff chooses to disregard the testimony of Martinson that after the impact he was attempting to steer away from the left guardrail and toward the right because he did not want to go off the left side of the road. There was testimony from one of plaintiff's witnesses that such steering by Martinson would have little or no effect upon where the vehicles ended up, but the jury is not bound by this testimony and may draw a contrary inference. Actually, there was evidence that the skid marks in defendants' lane first veered toward the left and then gradually curved toward the right to the right-hand edge of the highway. This is a case in which contradictory inferences can be drawn from the testimony, and it cannot be said, as plaintiff urges, that the physical facts are so conclusive that the testimony of the defendant driver may be disregarded as a matter of law.

■ Plaintiff lastly contends the trial court abused its discretion in failing to grant her request for a new trial, which was made on the basis of newly discovered evidence. As previously indicated, much trial time was

spent in an attempt to prove or to disprove that defendants' vehicle first collided with the left-hand guardrail before making contact with plaintiff's vehicle. Each side had its own expert examine defendants' automobile with this contention in mind. Both plaintiff and defendants had equal access to the vehicle, and their experts testified to their findings and opinions which did not coincide.

Plaintiff's expert testified concerning creosoted wood found wedged under the wheel cover of the left front wheel of defendants' vehicle and sought to connect this wood with a particular guardrail post on the left side of the highway. Defendants' expert found creosoted wood fastened under a gravel deflector behind the same wheel and sought to convince the jury that the wood had become imbedded from a right-hand guardrail post after the vehicle had spun around and was sliding backward down the highway.

After trial plaintiff sent her expert again to examine defendants' vehicle. Upon the motion for a new trial, the expert testified that he found creosote marks all along the bottom of the left main frame member as well as particles of creosoted wood in it. According to him, this creosoted wood could only have been located where he found it if the vehicle had been proceeding in a forward, rather than a backward, position, thus indicating the likelihood that the creosoted wood had come from a post in the left-hand guardrail rather than from one on the right-hand side of the highway.

Plaintiff contends that the relevancy and importance of the newly discovered evidence and the possibility that the defendants intentionally failed to disclose evidence unfavorable to them justify a new

trial. The rules concerning new trials because of newly discovered evidence were laid down as follows in *N. W. Ice & Cold Stor. v. Multnomah Co.,* 228 Or 507, 365 P2d 876 (1961):

> "Motions for new trials based upon claims of newly discovered evidence are not favored. *Newbern v. Exley Produce Express,* 208 Or 622, 303 P2d 231. A fundamental requirement to invoke the court's discretion to grant such a motion is a showing by the moving party that he could not, with reasonable diligence, have discovered and produced this evidence at the trial. ORS 17.610 (4). This court carefully pointed out this burden when we stated in *Lewis v. Nichols,* 164 Or 555, 570, 103 P2d 284:
>
> > " '* * * A presumption confronts the moving party that he failed to exercise due diligence before the trial, it being presumed that he would have discovered the evidence in time to have presented it during the trial had he employed reasonable industry. That presumption is founded upon good sense, for common experience teaches us that since virtually everyone regards a lawsuit as a serious matter, litigants generally discover all available witnesses before the trial. But the disfavor with which a motion for a new trial is regarded is also the product of necessity—the necessity for spurring on the parties to the discovery before trial of all available facts in order that repetitions of the trial may be avoided.' " 228 Or at 512.

■ Efficient judicial administration dictates that motions for new trials because of newly discovered evidence be granted sparingly. Otherwise, there would never be any finality to judicial proceedings. Plaintiff's expert had every opportunity to discover the evidence in question, and he examined the vehicle with the particular kind of evidence now offered in mind.

When he did not discover such evidence, it is difficult to make a case of intentional nondisclosure against defendants and their expert. By this comment we do not purport to decide the perimeters of required disclosure of evidence in civil cases.

It can be argued that, if neither expert found the offered evidence prior to trial, it has been demonstrated that it was not discoverable by the exercise of due diligence. However, the theory that defendants' vehicle caromed off the left-hand guardrail was plaintiff's, and every opportunity to discover the evidence which she claims further substantiates her theory was available to her. Under such circumstances, we cannot say that the trial judge abused his discretion in denying the motion for a new trial. There was an adequate basis for him to find that the evidence could have been found by the exercise of due diligence and, in such a situation, his decision will not be disturbed.

The judgment of the trial court is affirmed.