Argued June 8, 1976, affirmed February 25, petition for
rehearing denied April 12, 1977

# LANE COUNTY ESCROW SERVICE, INC. et al,
## *Respondents,*
### *v.*
## SMITH, *Defendant,*
### and
## COE, *Appellant.*
## (No. 72 2629, SC 23937)

560 P2d 608

William G. Wheatley, Eugene, argued the cause for appellant. With him on the briefs were Jaqua and Wheatley, Eugene.

Walter J. Cosgrave, Portland, argued the cause for respondents. With him on the brief were Frank H. Lagesen and Cosgrave & Kester, Portland.

BRYSON, J.

## BRYSON, J.

Plaintiff[1] brought this suit to obtain restitution of funds, or their traceable proceeds, defalcated from its bank trust account by defendants Smith and Coe. Plaintiff also seeks an accounting, the establishment of a constructive trust, and other equitable relief. The trial court granted a decree in favor of plaintiff. Only defendant Coe appeals.

This suit arises out of the same wrongful taking of trust funds as described in *Transamerica Ins. Co. v. U. S. Nat'l Bank,* 276 Or 945, 558 P2d 328 (1976). The background facts are set forth therein and are not repeated here.

The trial court made and entered the following pertinent findings of fact and conclusions of law.

"* * * * *.

"11. Coe is an aggressive man whose stated goal is to have a million dollars in net assets by the time he is thirty years old.

"12. By January, 1971, Smith and Coe had developed a close, day-to-day relationship involving business and pleasure.

"13. Coe had personal knowledge of the assets of Smith.

"14. Beginning in early 1971 Smith and Coe caused checks to be drawn on the trust account of Lane County Escrow Service, Inc., which were on deposit in the United States National Bank of Oregon.

"15. These checks were deposited by Smith and Coe into their own accounts in the United States National Bank of Oregon and thereafter withdrawn from the accounts by Smith and Coe for their own use.

"16. At no time did Smith or Coe have any legal right or interest in or to these funds and both Smith and Coe knew they had no legal right or interest in or to these funds.

"17. In December, 1971, Smith and Coe collaborated

---

[1] Transamerica Insurance Company is subrogated to the amount paid under its dishonesty insurance policy. Both plaintiffs are referred to as plaintiff or Escrow Service.

together to 'cover' the moneys drawn from the trust funds of Lane County Escrow Service, Inc., so that the year end audit would show no irregularities.

"18. Beginning in 1972 after Lane County Escrow Service, Inc.'s account was balanced, the funds unlawfully drawn on the trust account of Lane County Escrow Services, Inc. by Smith and Coe increased dramatically.

"19. A total of approximately $655,000.00 was deposited by Smith and Coe into their own accounts from trust funds of Lane County Escrow Service, Inc.

"20. Lane County Escrow Service, Inc. suffered a net loss of $387,000.00.

"21. Smith and Coe thereafter used the funds obtained by them from the Lane County Escrow Service, Inc. trust account for their own purposes and among other things for the purchase of real and personal property. The exact nature and description of this property is not fully determined at this time.

"22. Smith and Coe acted together jointly to perpetrate actual fraud upon Lane County Escrow Service, Inc., by conspiring together to obtain and by obtaining funds from Lane County Escrow Service, Inc., with knowledge that the funds were trust funds to which they were not entitled.

"* * * * *.

"24. The claims of Smith and Coe with respect to alleged loans by Smith to Coe and the claims of lack of knowledge by Coe of the ownership of the funds are false."

Conclusions of law:

"1. No adequate remedy at law was or is available to plaintiffs.

"2. Smith and Coe have been and will be unjustly enriched unless the Court grants the relief prayed for in plaintiffs' complaint.

"3. Plaintiffs are entitled to a constructive trust upon all funds obtained by defendants Smith and Coe from the trust account of Lane County Escrow Service, Inc., and upon all assets and property of any kind to the extent that funds of the trust account are traceable.

"4. Plaintiffs are entitled to a full and complete accounting of all funds obtained by the defendants

Smith and Coe and to a complete reporting of all transactions relating to funds obtained from Lane County Escrow Service, Inc. trust account and a full reporting on the nature and extent of the assets of the defendants Smith and Coe.

"5. Plaintiffs are entitled to a joint and several judgment against defendants and each of them for the full amount of the loss."

The decree imposes a constructive trust upon all funds obtained by Smith and defendant Coe from the trust account of plaintiff and upon all real and personal property and assets obtained by defendants through the use of funds from plaintiff's trust account. It was further decreed that the defendants make a full and complete accounting to determine what specific items of property this would include. Defendants were enjoined from "encumbering or disposing of their respective or joint real or personal property pending further order of this Court," and a joint and several judgment in an amount equal to the total sums defalcated was entered against the defendants. The court retained jurisdiction of the case pending the filing of the accounting.

Defendant Coe contends that his only relationship with defendant Smith is that of debtor; that in 1971 through 1972 he borrowed in excess of $250,000 from Smith and allegedly executed notes covering this sum of money in favor of Smith. Coe maintains that he was unaware that the funds allegedly loaned to him by Smith had been embezzled from Smith's employer, Escrow Service.

■ Defendant Coe contends throughout his brief that "[a] close examination of the facts presented reveals that Defendant Coe did not participate in any joint fraudulent activity" and "that the court below was without a basis in the evidence upon which to enter a judgment for Plaintiffs and against Defendant Coe." In other words, defendant contends that the facts do not support the trial court's findings of fact and conclusions of law. We review de novo, having in mind

[ 277 ]

that in cases involving the credibility of the parties' testimony, great weight is given to the trial court's findings. *Adamson v. Adamson,* 273 Or 382, 389, 541 P2d 460 (1975); *Stangier v. Stangier,* 245 Or 236, 238, 421 P2d 693 (1966); *Martin v. Good,* 234 Or 291, 296, 381 P2d 713 (1963).

Defendant argues that plaintiff's case against defendant Coe consists only of circumstantial evidence, innuendo and guilt by association. We do not attempt to discuss in detail the voluminous transcript and some 120 exhibits received in evidence. The evidence shows that the checks drawing money on plaintiff's trust account which were endorsed either by Coe or his secretary and deposited to one of his two personal accounts bear no relation in the dates and amounts to the dates and amounts of the alleged notes which Coe testified he gave to Smith for the monies he received. Coe prepared and executed a series of seven notes between February 22, 1972, and June 19, 1972, in favor of Smith. The trial court found the claim of Coe regarding the "alleged loans" to be "false." We reach the same conclusion. Coe testified:

"Q   Who typed the notes?
"A   I—you mean the ones between Don Smith and I?
"Q   Yes.
"A   I typed most of them, however, my secretary does recall typing at least one of them.
"* * * * *.

"* * * I use Rick Mercer for corporate and real estate dealings. You know, everything I do he knows about it. I tell him about it. I tell him what I want to do and whether there is a legal document needed. So we got in his office together, you know, the very first thing and tried to put some of the pieces together of what was happening. The notes were one of the things that were brought up immediately. I told Rick that I still retained the notes in my file. Smith knew of the notes and they were always available for him to hang onto because I made copies for myself. At that time he advised just to stick them in Smith's pocket even if he didn't want to take them. So I did.

"* * * * *.

"Q  Where did you meet him to do that?

"A  I believe I was headed into my attorney's office. I believe I met him either at my attorney's office or my office."

We find it difficult to believe defendant Coe's testimony that he knew nothing of the funds being wrongfully taken from plaintiff's trust account and that he is only in the position of a debtor to Smith. At the end of 1971 Smith became aware that plaintiff's books were about to be audited and plaintiff or its auditors would discover defendants' defalcations. At that time, December, 1971, both defendants wrote checks, with insufficient funds in their accounts, which they deposited to plaintiff's account at the United States National Bank in order to balance plaintiff's depleted trust account and prevent discovery of the fraudulent taking. The next day, and after the audit, defendants' overdrawn accounts were covered by further fraudulent checks drawn on plaintiff's trust account and deposited to defendants' respective checking accounts. Furthermore, Coe's testimony regarding his transactions with Escrow Service and the explanation of the source of his funds for his numerous investments and purchases is highly inconsistent. The trial court was unable to accept defendant Coe's testimony, and we reach the same conclusion.

Despite his relatively young age (Coe was 24 at the time of the defalcations), the trial court specifically found, and we also find, that Coe was an "intelligent and well educated man of business." Coe testified:

"Q  Now, what about interests or goals as related to investments in real estate or stock or other monetary matters?

"A  Well, for a very specific reason I set a goal to establish a million dollars in net assets by the time I was thirty years old. And this was to be used as a stepping stone for even a greater goal.

"Q  And how were you going to accomplish that?

"A  Well, there's only a number of alternatives that

an individual can rely upon to get to that—that goal and after looking over all these possibilities I was convinced that the proper way to establish the million dollars in net assets by the age thirty with my particular capital situation very small, I either had to produce one heck of a lot of insurance, which was one alternative; or invest money that other people had that they wanted to use for investments."

It is unbelievable that such a person as Coe, having knowledge of Smith's limited assets, could have entered into the substantial transactions described in this case without being aware of where those funds which he received were being illegally procured.

■ The burden of proof is upon the plaintiff to prove the material allegations of its complaint, but this burden can be met by circumstantial evidence. In *Cays v. McDaniel et al,* 204 Or 449, 283 P2d 658 (1955) (an action for fraud and deceit) we stated:

"Fraud is never presumed. He who charges fraud must prove it by evidence that is clear, satisfactory, and convincing. It is not necessary that it be established by direct evidence. Indeed, in many cases, that would be impossible. Therefore, it may be proved by circumstantial evidence of a clear and satisfactory character. *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 350, 225 P2d 757." 204 Or at 452-53.

*See also, Evans v. Trude et al and Champlin et al,* 193 Or 648, 655, 240 P2d 940 (1952), holding that badges of fraud or indicia of fraud are accompanying circumstances which, standing unexplained, may warrant an inference of fraud.

Having reviewed the evidence, we find that plaintiff met its burden of proving that Smith and Coe operated together jointly to defraud the plaintiff of $387,000 in trust funds; that both defendants knew that said funds were trust funds held by plaintiff for its clients in the United States National Bank of Oregon and that defendants had no right to those funds.

■■ Defendant also contends that plaintiff's lawsuit seeks only money damages and that, as such, it should have been tried at law rather than in equity and that each of the individual checks covering the total wrongful taking constitutes a separate count and should have been separately pleaded.

Defendant presented no timely demurrer to the trial court challenging equitable jursidiction, as prayed for in the complaint.[2] Suffice to say that the choice of remedy in the instant case belongs to the plaintiff. We stated in *Barnes v. Eastern & Western Lbr. Co.,* 205 Or 553, 593, 287 P2d 929 (1955):

> "* * * The right to restitution presents the victim of fraud with many remedies among which he may make a selection. * * *
>
> "One who has been defrauded and who seeks redress may choose any appropriate remedy. The choice of remedy is his and not that of the wrongdoer. * * *"

4 Pomeroy, Equitable Jurisprudence 102, § 1047 (5th ed 1941) states:

> "* * * It is true that the beneficial owner can often recover the money due to him by a legal action * * *; but in many instances a resort to the equitable jurisdiction is proper and even necessary."

As argued by plaintiff, at the beginning of this proceeding plaintiff asked for a temporary injunction and defendant Coe was given the opportunity to show cause why such an injunction should not be granted. At the hearing on the petition for injunction, defendant Coe stipulated that the order enjoining pending the trial of this suit could be granted. In *Ward v. Town Tavern et al,* 191 Or 1, 228 P2d 216 (1951), we stated that a party, contending upon appeal that equity had no jurisdiction to render a decree, must make timely objections in the trial court unless the subject is wholly outside of equity's jurisdiction. *See Allan & Leuthold v. Terra Inv.,* 271 Or 335, 337, 532 P2d 218

---

[2]Defendant filed a demurrer to plaintiff's amended complaint but on his own motion was allowed to withdraw said demurrer.

(1975); and *Winkleman v. Ore.-Wash. Plywood Co.,* 240 Or 1, 10, 399 P2d 402 (1965).

Plaintiff's complaint in equity, not demurred to in the lower court, will be liberally construed to state a cause of suit in favor of plaintiff. We do not construe plaintiff's complaint to be an action on the checks which were simply evidence to support the wrongful taking of funds by Smith and Coe. The thrust of plaintiff's pleadings is to trace funds wrongfully taken from their bank account, to establish a constructive trust, to require both defendants to make an accounting, and to prevent unjust enrichment. The suit was properly handled by the trial court as one in equity, and we give no credence to the argument that a separate count should be set forth as to each individual check from plaintiff's account which was eventually deposited to defendant Coe's account.

■ Defendant next assigns as error that portion of the trial court's decree which imposes a constructive trust upon all funds obtained by Coe from plaintiff's trust account as well as upon all property acquired through the use of those funds. It is further contended that the evidence is insufficient to "support a decree imposing a constructive trust on property held by defendant Coe."

Plaintiff's amended complaint alleged in part as follows:

"VI.

"During the years 1971 and 1972 the defendants fraudulently caused checks to be drawn on the trust funds of Lane County Escrow Service, Inc. on deposit in the United States National Bank. These checks, in the approximate amount of $655,000, were then fraudulently deposited by the defendants Smith and Coe in their own accounts in the United States National Bank and thereafter the funds were withdrawn from said accounts by the defendants Smith and Coe for their own use.

"VII.

"Defendants had no legal right or interest in or to said funds.

"VIII.

"The funds thus obtained by defendants Smith and Coe were thereafter used by them, among other things, for the purchase of real and personal property, the exact nature and description of which is unknown to plaintiffs at this time.

"* * * * *.

"X.

"No adequate remedy at law is available to plaintiffs and unless relief is granted by this Court plaintiffs will suffer irreparable damage through the dissipation of assets."

The prayer asked for a decree granting, among other things, that defendants hold any property acquired with funds of Escrow Service as "constructive trustees for the benefit of plaintiffs."

There is an abundance of evidence that defendant Coe had actual and constructive knowledge of the true source of the funds which he obtained through his friend and co-defendant, Donald Smith, from plaintiff's bank account and, further, that defendant Coe was an active participant in the unlawful scheme. On cross-examination, defendant Coe testified:

"Q   Now, you know several of the checks, I think all checks that were issued during the year 1972, couple of them in 1971, were made payable to the United States National Bank as payee. Now, do I understand that on some occasions you would take the check to the bank to deposit it?

"A   On most occasions, yes.

"* * * * *.

"Q   And what did Mr. Smith say about that? [The checks drawn on plaintiff's trust account]

"A   Well, he just informed me that it was standard procedure to make out checks to either the individual that was receiving the money out of escrow or whatever the purpose was, or to their bank and he said basically one of the advantages, if somebody knocks you on the head on the way to the bank, they will catch the person, recognize that person making the deposit wasn't the person actually had the account or trying to cash that

check. That was the reason for putting U. S. National Bank on the check.

"* * * * *.

"Q   Now, when you were getting these various loans from Mr. Smith, you realized these checks were being drawn on the Lane County Escrow account, didn't you?

"A   I knew they were being drawn on the account for Lane County Escrow, yes."

On June 28, 1972, Smith admitted the defalcation to Mr. Chatt, president of plaintiff, his employer. At that time he rendered a statement which was received in evidence which stated:

"* * * In May or June 1971 I started taking $1000 to $2000 at time and I would see that the money got to William B. Coe. Sometimes I would run the money through my bank account and at other times I would deliver it direct to him. * * * He [Coe] gave me a supply of his deposit slips so that this could be done. * * *"

The testimony of Smith, through this statement, definitely includes Coe in the plan or scheme and is evidence that Coe received substantial sums of the money fraudulently withdrawn from plaintiff's trust account.

The evidence shows the defendant Coe to have wrongfully and against equity and good conscience obtained funds belonging to the plaintiff and that he has no right to retain possession of such funds or their proceeds. A constructive trust properly arises under these conditions.

In 4 Pomeroy's Equity Jurisprudence § 1047 (5th ed 1941), it is noted, at pages 101-102, that:

"By the well-settled doctrines of equity, a constructive trust arises whenever one party has obtained money which does not equitably belong to him, and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it; as, for example, when money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust, or violation of fiduciary duty, and the like. * * *"

[ 284 ]

*See Marston v. Myers et ux,* 217 Or 498, 509, 342 P2d 1111 (1959) to the same effect.

Restatement of the Law, Restitution 818, § 202, provides:

> "Where a person wrongfully disposes of property of another knowing that the disposition is wrongful and acquires in exchange other property, the other is entitled at his option to enforce either
>
> "(a) A constructive trust of the property so acquired, or
>
> "(b) An equitable lien upon it to secure his claim for reimbursement from the wrongdoer."

*See also, c. Constructive trust, id* at 820.

■ Contrary to early cases, it is now universally recognized that a constructive trust will arise when stolen or embezzled funds are used to purchase other property. The owner of the funds may follow and recover the property or its proceeds as long as it has not been transferred to a bona fide purchaser. *See* ALR 3d Constructive Trusts-Stolen Funds 1359, and cases therein cited. See also, V Scott on Trusts § 462.4 (3d ed 1967).

There is nothing improper about charging a constructive trustee to account for his disposition of the property which came into his possession through his fraudulent activities. Indeed, defendant Coe did not contest the trial court's decreed accounting. We conclude that the trial court did not err in imposing a constructive trust, as provided in its decree.

■ The defendant Coe also contends that a constructive trust is not an appropriate remedy in this case. It is argued that the funds paid to Smith and Coe were the property of the United States National Bank of Oregon and not of Escrow Service. The United States National Bank is plaintiff's depository bank and was the institution which honored the fraudulent checks negotiated by Smith and Coe. The negligence of the bank or Escrow Service is a matter being litigated in

the case of *Transamerica Ins. Co. v. U. S. Nat'l Bank,* 276 Or 945, 558 P2d 328 (1976). The only monies plaintiff can recover are those the court found in this case to be monies belonging to Escrow Service and not to the bank.

Defendants have no need to fear double recovery against them as the plaintiff and the United States National Bank have stipulated that any monies recovered from defendants Smith and Coe are to be used to reduce any liability owed by the bank honoring the checks. The stipulation, and the judgment in this case, would be a defense in the event of any action by the bank against Coe for these same monies. Furthermore, the court has reserved jurisdiction of this suit for further proceedings after the ordered accounting has been rendered by defendants.

Neither party alleges that Smith and Coe have wrongfully taken the bank's money. The bank has lost no money. The bank debited and credited the plaintiff's trust account for each deposit and withdrawal, including withdrawals covering the checks here involved.

Defendant Coe also assigns as error the trial court's order which denied his motions to strike and to make more definite and certain. A total of some five separate motions to strike and make more definite and certain were denied by the court.

Generally, the disposition of a motion to strike and to make more definite and certain is addressed to the trial court's discretion. *McGinnis et al v. Keen,* 189 Or 445, 449, 221 P2d 907 (1950); *Cutsforth v. Kinzua Corp.,* 267 Or 423, 428, 517 P2d 640 (1973). A complaining party must show that the trial court's exercising of its discretion in allowing or denying the motion was prejudicial to his case. *Wood et ux v. Baker et ux,* 217 Or 279, 285, 341 P2d 134 (1959); *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 218, 493 P2d 138 (1972).

Our examination of the trial file reveals that defendant Coe was adequately informed of the nature of plaintiff's suit as well as the detailed transactions complained of, and we find that plaintiff Coe was not prejudiced in the trial of his case by the court's orders.

■ Defendant Coe also contends that the trial court erred in allowing plaintiff to amend its complaint at the close of plaintiff's case to conform to the evidence received at trial.

We have held that amendments pursuant to ORS 16.390 to conform pleadings to the evidence received at trial should be liberally allowed and that a trial court does not abuse its discretion in allowing such amendments where there is no prejudice to the opposing party. *Morrill v. Rountree,* 242 Or 320, 324, 408 P2d 932 (1965); *Engelcke v. Stoehsler,* 273 Or 973, 544 P2d 582, 586 (1975).

We have examined the evidence and the pleadings in this case, and the amendments complained of did not change the theory of plaintiff's suit. In the absence of any showing of substantial prejudice to defendant Coe, we conclude that the trial court did not abuse its discretion in allowing plaintiff's amendments to its pleadings in this equitable proceeding.

Finally, defendant Coe contends that the trial court erred in denying his motion for "Rehearing and New Trial." The affidavit supporting the motion stated that defendant Donald R. Smith was willing to testify. Both defendants had been indicted as a result of the alleged wrongful taking of plaintiff's funds. Smith refused to testify in this case and asserted his Fifth Amendment rights. Subsequent to the trial in this case, Smith entered a guilty plea on the indictment and was incarcerated.

The trial court ordered that Smith's deposition be taken at Salem, Oregon. After examining the contents of Smith's deposition, the court denied the motion for a new trial.

ORS 17.605 provides:

> "A new trial is a reexamination of an issue of fact in the same court after judgment."

ORS 17.610(4) provides that a former judgment *may* be set aside and a new trial granted upon discovering material new evidence which could not have been discovered and produced at trial.

In *Marshall v. Martinson,* 264 Or 470, 477, 506 P2d 172 (1973), we stated:

> "Efficient judicial administration dictates that motions for new trial because of newly discovered evidence be granted sparingly. Otherwise, there would never be any finality to judicial proceedings. * * *"

Motions for a new trial based on newly discovered evidence are not favored. *Nw. Ice & Cold Stor. v. Multnomah Co.,* 228 Or 507, 512, 365 P2d 876 (1961). The granting of a new trial rests largely in the sound discretion of the trial court and will not be disturbed on appeal unless there has been a manifest abuse of discretion. *Newbern v. Exley Produce Express,* 208 Or 622, 632, 303 P2d 231 (1956).

This was a lengthy trial, and the trial court displayed an abundance of patience and reasonable discretion. The court reviewed Smith's deposition and undoubtedly compared its contents with Smith's statement given on June 28, 1972, shortly after Smith admitted the fraudulent activities. The two statements bear little resemblance to each other, except that the deposition shows Smith did tell Coe that Escrow Service had to account to its investors and that "all their money" had to come "back in" to Escrow Service for its investors if they wanted it.

Any value of Smith's testimony is dependent on the credibility of Smith and Coe. The trial court found that Coe's claims as to the "lack of knowledge by Coe of the ownership of the funds are false." We have reviewed the affidavits and deposition of Smith and find that the further evidence of Smith would add nothing to the volumes of evidence received by the trial court. Also,

[ 288 ]

we doubt the credibility of Smith under the circumstances of this case.

Furthermore, this court has consistently held that "[t]he statute authorizing the granting of new trials applies only to law actions and not to suits in equity." *Freytag v. Vitas,* 213 Or 462, 471, 326 P2d 110 (1958). *See also, Waldow v. Waldow,* 189 Or 600, 604, 221 P2d 576 (1950); *In re Shepherd's Estate,* 152 Or 15, 26, 41 P2d 444 (1935); *Mannix v. Harju et al,* 125 Or 258, 260, 266 P 238 (1928); *Lachele v. Oregon Realty Exch. Inv. Co.,* 121 Or 582, 587, 256 P 646 (1927); *In re Seidels Estate,* 64 Or 321, 325, 130 P 53 (1913).

We conclude that the trial court did not err in denying the motion for a "Rehearing and New Trial." The decree of the trial court is affirmed.