Argued December 8, 1977, affirmed February 28, 1978

JEWETT et al, *Respondents,*

*v.*

DEERHORN ENTERPRISES, INC., *Appellant.*

(No. 76-2804, SC 25139)

575 P2d 164

E. Scott Lawlor of McCoy & Lawlor, Eugene, argued the cause and filed the brief for appellant.

Randall E. Thwing of Thwing, Atherly & Butler, Eugene, argued the cause and filed the brief for respondents.

Before Denecke, Chief Justice, Holman and Howell, Justices, and Richardson, Justice Pro Tempore.

RICHARDSON, J., Pro Tempore.

**RICHARDSON, J.,** Pro Tempore.

This is a suit in equity brought by 19 plaintiffs to enjoin the operation of a pig farm on defendant's property. Plaintiffs claim the noxious odors, noise and flies emanating from the piggery interfere with the use and enjoyment of their premises. The decree permanently enjoined defendant from operating a pig farm on its property.

Defendant challenges the decree on three grounds. First, that the alleged nuisance, if proven, is not sufficient to justify an injunction. Second, that the plaintiffs did not establish by clear and convincing evidence that a nuisance exists. Third, the court exceeded its authority in permanently enjoining the raising of any pigs on defendant's property.

The area surrounding defendant's and plaintiffs' property is described as "rural residential." This was defined as an area where people build their homes to take advantage of a country atmosphere but do not operate their property as a commerical farm. Over the past several years the area has changed from farming to residential. Approximately one mile from the defendant's pig farm a large housing subdivision is under construction. None of the plaintiffs live in this subdivision.

Plaintiffs' homes, which are described as attractive and well kept, range in value from $25,000 to $100,000. The distance of their respective homes from the piggery varies from 240 feet to one quarter mile. The plaintiffs all owned or occupied their property prior to the time defendant began operating the pig farm.

Defendant corporation was formed in 1975. Mr. and Mrs. Miksis and Mr. and Mrs. Mitchell are the shareholders, directors and officers of the corporation. These four individuals had formed a partnership in 1972 and purchased the property on which the pig

farm is presently located. This property, which comprises approximately 25 acres, was previously used as a bedding plant nursery. It included a number of greenhouses and related equipment as well as a residence.

When the partners purchased the property the greenhouses and residence were in a state of neglect and disrepair. They renovated one of the greenhouses and commenced raising bedding plants and tomatoes. This proved to be an unprofitable enterprise and in December 1974 they began raising pigs.

All of the assets and liabilities of the partnership were transferred to the corporation after it was formed. They commenced the pig farming operation with approximately 125 animals. This number steadily increased and at the time of trial the number fluctuated around 400. The fluctuation is due to normal sales of fattened pigs and to propagation.

To accommodate the animals two of the greenhouses were converted to pig pens with concrete floors containing a gutter down the middle. Initially a small sewer lagoon was used to dispose of the animal waste from the pens. This proved unfeasible and another of the greenhouses was converted for use as a lagoon. This also proved ineffective and defendant dug a much larger lagoon. The animal waste from the pens is washed into the gutter and flows into a settling tank from where it is pumped into the large lagoon for decomposition. Defendant's ultimate plan was to refurbish the remaining greenhouses to raise bedding plants and to use the methane gas from the decomposing animal sewage to heat the greenhouses. This plan was just in the "talking stages" at the time of trial. The corporation is presently leasing one of the greenhouses to a person who raises bedding plants.

The pigs are fed, in part, whey and milk by-products obtained from a dairy and bakery products, including raw bread dough and stale bread, purchased from a bakery. The stale bread is obtained in the

standard plastic bread wrapper which is removed for feeding and then burned. The whey and raw dough is stored in open barrels near the pig pens.

Defendant's first and second assignments of error relate to the sufficiency of the evidence to establish a nuisance and the sufficiency of the nuisance, if established, to justify an injunction. These issues can properly be discussed together.

In approaching these issues we take note of the proposition that an injunction is an extraordinary remedy and will be granted only upon clear and convincing proof. *Barker Painting Co. v. Brotherhood of Painters, etc.,* 15 F2d 16 (3rd Cir 1926), *cert den* 273 US 748 (1927); *York et ux v. Stallings et al,* 217 Or 13, 341 P2d 529 (1959); *Bennett v. City of Salem et al.,* 192 Or 531, 235 P2d 772 (1951); *De Armond et al. v. Moon et al.,* 123 Or 28, 260 P 1100 (1927). A nuisance, claimed to be an interference wpth the use and enjoyment of land, is not actionable unless that interference is both substantial and unreasonable. *York et ux v. Stallings et al, supra; Amphitheaters, Inc. v. Portland Meadows,* 184 Or 336, 198 P2d 847, 5 ALR2d 690 (1948). Whether a particular use of property constitutes an actionable nuisance cannot be determined by fixed general rules but depends on the individual facts of a particular case. We have, however, used a number of guidelines in assessing each fact situation.

Comprehensively stated these guidelines are the location of the claimed nuisance, the character of the neighborhood, the nature of the thing complained of, the frequency of the intrusion, and the effect upon the enjoyment of life, health and property. *York et ux v. Stallings et al; Amphitheaters, Inc. v. Portland Meadows,* both *supra.*

We review de novo (ORS 19.125(3)) having in mind that in cases involving the credibility of witnesses we give great weight to the trial court's findings. *Lane County Escrow v. Smith, Coe,* 277 Or 273, 560 P2d 608

(1977); *Adamson v. Adamson,* 273 Or 382, 541 P2d 460 (1975); *Stangier v. Stangier,* 245 Or 236, 421 P2d 693 (1966); *Martin v. Good,* 234 Or 291, 381 P2d 713 (1963).

Plaintiffs complained of essentially three conditions resulting from the operation of the pig farm: a noxious unpleasant odor from the pens, the lagoon and in some measure from the fermenting whey and bakery products; noise in the form of high pitched squealing made by the pigs while fighting, mating and nursing their young; and finally, a substantial increase in flies after the piggery became operational.

The evidence concerning these complaints, their intensity and frequency and their effect on the plaintiffs came exclusively from the testimony of witnesses. The assessment of this evidence depends in large measure on the credibility of the witnesses. Defendant points out a number of conflicts in the testimony principally between the testimony of witnesses for the plaintiffs and for the defendant. The trial court made findings of fact which resolved these conflicts in favor of the plaintiffs. We have examined the transcript of testimony which comprises nearly 1000 pages in the record, and conclude there is no basis for making contrary findings of fact. It would serve no purpose to review this testimony in detail and we merely recite our conclusions pursuant to the guidelines set out above.

The pig farm is located on approximately 25 acres. However, the 400 animals are confined in two converted greenhouses with an approximately one quarter acre area in which the pigs may roam. The confinement of approximately 400 pigs in a relatively small space results in a concentration of odor and noise. The cleaning procedure followed by defendant is incomplete and results in a residue of animal waste in the pens which gives off an unpleasant odor. The lagoon, covering slightly more than two acres, and the settling tank also emit odors.

The character of the neighborhood surrounding the pig farm is rural residential. All of the plaintiffs' homes are within one quarter mile of the defendant's property. The plaintiffs all use their property as a residence and not for commercial farming. Some years prior to the commencement of defendant's farming operation the area changed from a commercial farm community to a residential community. This fact, coupled with the existence of the nearby subdivision, foreshadows future residential development in the area. If the pig farm is to continue residential development in the area may be curtailed.

The plaintiffs all owned or occupied their property prior to the time defendant purchased the property and began raising pigs. This is not then a situation where plaintiffs came to the nuisance and then registered their complaint. In *Kramer v. Sweet,* 179 Or 324, 169 P2d 892 (1946), we said under those circumstances "* * * the court must take a less favorable view of defendant's case than it might have been disposed to take if this business had been maintained in the neighborhood for a long period of time." Indeed, the evident character of the neighborhood should have served as a warning to defendant of the risk they assumed in locating the pig farm in this area. A pig farm which may be operated in a rural area where the homes are widely separated without unreasonable interference with others' use of their property may become unreasonable when placed in a residential district. By the very nature of its operation a piggery is repulsive to residential neighbors.

As indicated plaintiffs complained of odors, noise and flies emanating from the defendant's farm. The odor from the animal waste in the pens, the settling tank and the lagoon was variously described as "nauseating," "vile," "rotten," "very unpleasant" and "suffocating" in its intensity. This odor was at times combined with the odor of fermenting pig food and rancid raw bread dough. To a limited extent there was an odor from the burning plastic bread wrappers.

■ Whether a particular condition is sufficient to constitute a nuisance depends upon its effect on an ordinarily reasonable man, a normal person of ordinary habits and sensibilities. *Stoddard et al. v. Snodgrass et al.,* 117 Or 262, 241 P 73, 43 ALR 1160 (1925); *York et ux v. Stallings et al; Amphitheaters, Inc. v. Portland Meadows,* both *supra.* There was no evidence that any of the plaintiffs possessed other than the sensibilities of normal human beings. Nor was there evidence any plaintiff had an affliction or followed peculiar living habits that made them more sensitive to odor, noise or insects. The odor was experienced in varying degrees on all of plaintiffs' property and was uniformly described as unpleasant.

The noise from the farm is the least of plaintiffs' complaints and if only the noise were proven we would find it difficult to hold the defendant's farm constituted a nuisance. This noise, described as "high pitched squeals" and an "unnerving sound" did exist and can be considered as part of the cumulative effect of the pig farm on the neighborhood.

The substantial increase in the number of large blowflies came after the pig farm was in full operation. None of the plaintiffs had noted a problem with the flies prior to this time. Although there is no direct evidence the insects came from the defendant's farm the conclusion is inescapable that they resulted from the operation of the piggery. The flies existed in large numbers around those plaintiffs' homes which were nearer to the defendant's farm. At times they covered the windows of the houses and the windshields of the cars and rose in large swarms when persons walked across the lawn. The insects were present in significant numbers inside as well as outside plaintiffs' houses. One of the plaintiffs sprayed insecticide in the area around his house on a number of occasions without significantly abating the insect problem. The flies were present the year around even, to a limited extent, during the winter when they are ordinarily dormant.

Another factor to be considered is the frequency of the intrusion of the odor, noise and insects. Each of the plaintiffs detected the odor in varying degrees the year around. It was more intense in the summer but was still present to an unpleasant degree during the colder seasons of the year. The location and intensity of the odor varied with the daily air currents and wind direction and was usually more noticeable in the early morning and evening. The frequency of the odor was such that it can be described as nearly constant.

The noise produced by the pigs was irregular but occurred usually every day. Some of the plaintiffs had been awakened during the night by the noise. Only those plaintiffs who lived closest to the pig farm were bothered.

A critical inquiry in determining if a nuisance exists and if so whether some relief is mandated is the effect of the intrusions on the plaintiffs and whether the interferences with the use of their property is substantial and unreasonable. *Amphitheaters, Inc. v. Portland Meadows, supra.* One primary reason many of the plaintiffs purchased their property was to have ready access to outdoor activities such as picnics, gardening, outdoor barbeques and recreation. Because of the odor and the insects plaintiffs have had to substantially curtail their outdoor activities. During the summer months they are unable to open the doors and windows of the houses because of the pervasive unpleasant odor and the large number of flies. In light of the uses the plaintiffs would normally make of their premises these interferences are substantial. It is unreasonable to require them to adjust their normal living habits in deference to the defendants' use of its property. We conclude, as did the trial court, defendant's pig farm is a nuisance which interferes substantially and unreasonably with plaintiffs' use and enjoyment of their property. Plaintiffs are entitled to relief.

Defendant's final contention is the court exceeded its authority in granting a permanent injunction

prohibiting defendant from raising any pigs on its property. The injunction effectively terminates the pig raising enterprise and defendant contends it will work a substantial financial hardship on the corporation and the individual shareholders. In addition, it is contended, Mr. Miksis will be prevented from following his chosen occupation.

An injunction does not issue as a matter of absolute or unqualified right. When a nuisance is established the form and extent of the relief designed to abate the nuisance is within the discretion of the court. In exercising that discretion the court may refuse an injunction where the hardship to the defendant by a permanent injunction greatly outweighs the benefit resulting to the plaintiffs. *York et ux v. Stallings et al, supra.*

Clearly a permanent injunction will result in a substantial financial hardship to defendant. In purchasing the land, constructing the facilities and stocking the farm with pigs, the defendant has expended in excess of $100,000. Although defendant experienced a loss in 1975 and 1976, Mr. Miksis projected a substantial profit for 1977 and 1978. This projection was based upon the fact that most of the necessary capital investment has been made and the farm is now fully operational and capable of being operated at a profit. However, part of this economic projection is an increase in the herd to 1600 animals. This increase, which will bring a larger concentration of animals in the same space, will increase the odor and noise and exacerbate the existing nuisance.

In applying this comparative injury doctrine we take into consideration the fact the injury to defendant is economic, whereas the injury to plaintiffs is in the substantial interference in the day to day use and comfort of their residences. The plaintiffs can avoid this interference only by moving, a costly inconvenient process that effectively denies them the use of their land.

[ 478 ]

Defendant suggests, for the first time on appeal, abatement of the nuisance, short of a permanent injunction, could include additional insulation of pig sheds to cut down noise and installation of exhaust fans to cleanse odor from the pens.

■ The court was not called upon to assess these alternatives to a permanent injunction. Although this court has the power to remand the case to consider possible corrective measures, *York et ux v. Stallings et al, supra,* we are not presented with any concrete proposals which would abate the nuisance. The conditions complained of have existed since early in 1975. It would be unreasonable to require the plaintiffs to further endure the nuisance while defendant experiments with corrective measures. The difficulty facing defendant lies in the inherently offensive aspects of any piggery located in semiresidential communities. We seriously doubt these offensive aspects can practicably be contained. We decline to remand this case to allow further evidence respecting alternative abatement procedures. We conclude a permanent injunction prohibiting the operation of a pig farm on defendant's property is the only effective remedy.

The difficulty in applying the comparative injury analysis to this situation is that there is no middle ground. If the nuisance is to be abated there appears no practical alternative to a permanent injunction, the result being that defendant suffers financial loss. If the injunction is not given plaintiffs must endure or move away.

In arriving at our conclusion we give weight to the fact defendant commenced the farming operation after the time when plaintiffs owned or occupied the property. Thus, defendant does not have a business of long standing that is economically important to the area. *Georgia v. Tennessee Copper Co.,* 206 US 230, 27 S Ct 618, 51 L Ed 1038 (1907); 237 US 474, 35 S Ct 631, 59 L Ed 1054 (1915); 240 US 650, 36 S Ct 465, 60 L Ed 846 (1916); *Madison v. Copper Co.,* 113 Tenn 331, 83 SW

658 (1904). In addition we take note of the fact the character of the area is becoming increasingly residential. The continued existence of the nuisance undoubtedly will constitute a deterrence to normal residential development of the community.

The decree is affirmed.